Beryl **BROYDE;** Mirel **Broyde;** David **Cohen;** Judith **Cohen;** Nathan **Cohen;** Milton **Duchan;** Marion **Duchan;** Philip D. **Haack;** Diane **Hochberg;** Icek **Kuperman;** Helen **Kuperman;** Jerry J. **Novetsky;** Elliot **Shoenig;** Sarah **Shoenig;** Sharon K. **Teasley;** Robert L. **Tilden;** Samuel **Tron;** and Doris **Tron,** Plaintiffs–Appellants,

v.

**GOTHAM TOWER, INC.;** Bell **Broadcasting Company;** Hoker **Broadcasting, Inc.;** Marlin **Broadcasting Company;** and Viacom **International, Inc.,** Defendants–Appellees.

No. 92–2395.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 4, 1993.

Decided Jan. 14, 1994.

---

Donnelly W. Hadden, Ann Arbor, MI (argued and briefed), Mark A. Richardson, Troy, MI (briefed), for plaintiffs-appellants.

Kenneth B. Morgan (briefed), Bruce S. Kahn, Seyburn, Kahn, Ginn, Bess & Howard, Southfield, MI, for Gotham Tower, Inc.

Stewart L. Mandell, Kathleen McCree Lewis, Dykema & Gossett, Detroit, MI, Mark H. Sutton, Dykema, Gossett, Spencer, Goodnow & Trigg, Bloomfield Hills, MI (argued and briefed), for Bell Broadcasting Co., and Marlin Broadcasting Co.

Herschel P. Fink, Honigman, Miller, Schwartz & Cohn, Detroit, MI (briefed), for Viacom Intern., Inc.

Before: MARTIN and BOGGS, Circuit Judges; and HULL, District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

In this action predicated on common law nuisance, the plaintiffs, all residents of Oak Park, Michigan, allege that the defendants' radio signals interfere with the operation of home electronic equipment, thereby disrupting the plaintiffs' use and enjoyment of their property. Plaintiffs now appeal from an order of the district court dismissing their complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, we affirm the district court.

Defendant Gotham Tower, Inc. operates an eight-hundred-foot tall radio tower in Oak Park from which defendants Bell Broadcasting Company, Marlin Broadcasting Company, and Viacom International, Inc. transmit FM radio signals. The Federal Communications Commission granted the defendants licenses to broadcast from this location and now regulates the frequency, timing, and power of the defendants' transmissions.

The plaintiffs, residents of a nearby neighborhood, claim that the radio signals broadcast from Gotham Tower cross their property, leaving behind a wake of malfunctioning household appliances. The plaintiffs allege that these signals interfere with television and radio reception, activate garage door openers, and render certain telephones, stereos, and recording devices unusable. Maintaining that the intensity of the defendants' signals "regularly exceed[s] the federal standard for F.M. blanketing interference," the plaintiffs filed suit on common law nuisance grounds in Oakland County Circuit Court on July 7, 1992. In their complaint, the plaintiffs sought both injunctive relief and damages.

On July 27, the defendants removed the case to federal district court and, shortly thereafter, moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, the defendants contended that the Federal Communications Act of 1934, 47 U.S.C. §§ 151–613, preempts the plaintiffs' nuisance claim.

In reaching its decision, the district court first noted the consistent finding of preemption by all courts that have considered the interaction of common law nuisance claims and the Federal Communications Act. *See Still v. Michaels,* 791 F.Supp. 248 (D.Ariz. 1992) (nuisance action preempted by Federal Communications Act); *Still v. Michaels,* 166 Ariz. 403, 803 P.2d 124 (1990) (FCC has exclusive jurisdiction over resolution of radio signal interference nuisance claims); *Smith v. Calvary Educational Broadcasting Network,* 783 S.W.2d 533 (Mo.Ct.App.1990) (Federal Communications Act preempts state nuisance action based on radio signal interference with electrical appliances); *Blackburn v. Doubleday Broadcasting Co., Inc.,* 353 N.W.2d 550 (Minn.1984) (radio transmission nuisance claims under exclusive jurisdiction of FCC). The district court then held that judicial resolution of the plaintiffs' nuisance claim would be inconsistent with the FCC's exercise of exclusive jurisdiction over the broadcast industry. On October 21, the district court dismissed the plaintiffs' case. The plaintiffs, in turn, filed this timely appeal.

In this Court, a "motion under Rule 12(b)(6) tests whether a claim has been adequately stated in the complaint. The basic requirements for a pleading are set out in Rule 8(a) and call for 'a short and plain statement of the claim showing that the pleader is entitled to relief.' In considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint." *Nishiyama v. Dickson County, Tenn.,* 814 F.2d 277, 279 (6th Cir.1987) (en banc) (citations omitted). A Rule 12(b)(6) motion should only be granted if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Hospital Bldg. Co. v. Trustees of Rex Hosp.,* 425

[*] The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennes- see, sitting by designation.

U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). Here, the plaintiffs assert that the Supreme Court's recent opinion in *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), alters federal preemption analysis, authorizes their common law nuisance suit, and mandates reversal of the district court's grant of defendant's Rule 12(b)(6) motion. We are not persuaded.

■ Initially, plaintiffs note correctly that *Cipollone* reaffirms the presumption against federal preemption of state law. The Court's opinion, limited to consideration of the Federal Cigarette Labeling and Advertising Act and the Public Health Cigarette Smoking Act of 1969, held that the legislation did not preempt certain state law damage actions. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2625. In reaching this conclusion, the Court emphasized that Congress' enactment of provisions in the legislation explicitly defining the preemptive reach of the statutes meant that "matters beyond that reach are not preempted." *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2618. The Court noted, however, that absent such a specific preemption provision, it would turn to an implied preemption analysis. *Id.* As the Court's opinion recognized, "[i]n the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Id.* at ——, 112 S.Ct. at 2617 (citations omitted).

Such an implied preemption analysis is appropriate here. The Federal Communications Act does not contain an explicit provision defining the legislation's preemptive scope that limits this Court's inquiry. Rather, this Court is required to determine whether the plaintiffs' state law nuisance action actually conflicts with the Act or if plaintiffs' claim is necessarily displaced because the Act fully occupies the field.

The plaintiffs raise four challenges to the district court's judgment that the Federal Communications Act preempts common law actions to remedy a nuisance caused by radio signals. First, the plaintiffs assert that there is no language in the Act that expressly preempts state nuisance suits. Next, the plaintiffs claim that the Act's savings clause, 47 U.S.C. § 414, demonstrates clear congressional intent to preserve state claims and, thus, that the Act does not occupy the field. Third, the plaintiffs maintain that there is no actual conflict between the provisions of the Act and their common law nuisance action. Finally, the plaintiffs contend that they are entitled to bring their nuisance action to enforce state standards that exceed the obligations imposed upon defendants under the Act.

■ This Court has carefully considered each of the plaintiffs' arguments. Resolution of this matter, however, turns on a single issue: the existence of an irreconcilable conflict between the FCC's exercise of exclusive jurisdiction over the regulation of radio frequency interference and the imposition of common law standards in a damages action. As the Supreme Court recognizes, the FCC's jurisdiction "over technical matters" associated with the transmission of radio signals "is clearly exclusive." *Head v. New Mexico Board of Examiners in Optometry*, 374 U.S. 424, 430 n. 6, 83 S.Ct. 1759, 1763 n. 6, 10 L.Ed.2d 983 (1963); *cf. In re Long Distance Telecommunications Litigation*, 831 F.2d 627, 633 (6th Cir.1987) (state law claims for fraud and deceit are not preempted by the Communications Act because they fall "within the conventional experience of judges" and "do not require agency expertise for their treatment"). The radio signal interference at issue here falls within the FCC's technical domain.

To promote exclusive FCC jurisdiction over radio signal interference with home appliances and systems, the Act empowers the FCC to adopt regulations "establishing minimum performance standards for home electronic equipment and systems to reduce their susceptibility to interference from radio frequency energy." 47 U.S.C. § 302a (a)(2). In ratifying section 302a in 1982, the Conference Report emphasized that the amendments were:

> intended to clarify the reservation of exclusive jurisdiction to the Federal Communi-

**998**

cations Commission over matters involving RFI [radio frequency interference]. Such matters shall not be regulated by local or state law, nor shall radio transmitting apparatus be subject to local or state regulation as part of any effort to resolve an RFI complaint. The Conferees believe that radio transmitter operators should not be subject to fines, forfeitures, or other liability imposed by any local or state authority as a result of interference appearing in home electronic equipment or systems. Rather, the Conferees intend that regulation of RFI phenomena shall be imposed only by the Commission.

1982 U.S.Code Cong. & Ad.News 2237, 2277. Given such explicit congressional pronouncements, enforcement of the plaintiffs' state law nuisance action would frustrate the objectives of the Act. Accordingly, the district court properly granted defendants' Rule 12(b)(6) motion.

■ The plaintiffs are not, however, left without a forum in which to raise their radio frequency interference complaints. The residents may lodge informal written complaints, specifically setting forth the nature and duration of the interference, with the Gotham Tower stations, the local FCC field office, and the FM Branch of the Mass Media Bureau. *See In Re Application of Calvary Educational Broadcasting Network, Inc.,* 7 F.C.C.R. 4037 (1992) (noting that FCC action followed the filing by local residents of more than nine hundred blanketing interference complaints); 47 C.F.R. § 1.41 (1992). The residents may also file petitions to deny any license or renewal applications filed with the FCC by the Gotham Tower stations. 47 U.S.C. § 309(d); 47 C.F.R. § 73.3584 (1992); *see also In Re Application of Calvary Educational Broadcasting Network, Inc.,* 7 F.C.C.R. 4037 (1992) (designating station's application for renewal of license for evidentiary hearing after local residents filed petitions to deny). After taking such steps, moreover, the plaintiffs will have an opportunity to pursue federal court review of their claims. Under the Act, aggrieved parties may seek review of decisions and orders of the FCC in the United States Court of Appeals for the District of Columbia Circuit. 47 U.S.C. § 402(b); *see also FCC v. ITT*

*World Communications, Inc.,* 466 U.S. 463, 468, 104 S.Ct. 1936, 1939, 80 L.Ed.2d 480 (1984).

For the foregoing reasons, the judgment of the district court is affirmed.