204 F.3d 311 (2nd Cir. 2000)
 GRAEME FREEMAN, MARY BETH FREEMAN, FRANK ITTLEMAN, ELAINE ITTLEMAN, MIKE FOURNIER, HOLLY FOURNIER, ELLEN LANE, WILLIAM PINNEY, JR., MARK W. BOLLES, CLAUDIA MUCKLOW, DONNA A. WARK, IRIS MUGGENTHALER, JAMES H. SQUIRES, LAWRENCE
HAMILTON, ROBERT CARMODY, MARK MUSIEL, MICHAEL YANTACHKA, LORIE GADBOURY, CHRIS MCGEE, PETER COLEMAN, BARBARA SANFORD FARRELL, AND WILLIAM PINNEY, SR.,
Plaintiffs-Appellants,
v.
BURLINGTON BROADCASTERS, INC., d/b/a WIZN, CHARLOTTE FIRE & RESCUE SERVICES, INC., and NYNEX MOBILE LIMITED PARTNERSHIP 1, d/b/a BELL ATLANTIC NYNEX MOBILE, Defendants-Appellees.
 Docket No. 97-9141
August Term 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: October 15, 1999
Decided: February 23, 2000
 
 Appeal from the August 11, 1997, judgment of the United States District Court for the District of Vermont (William K. Sessions, III, Judge), dismissing, for lack of subject matter jurisdiction, an administrative appeal removed from the Vermont Environmental Court.
 Affirmed as modified.[Copyrighted Material Omitted][Copyrighted Material Omitted]
 Gerald R. Tarrant, Tarrant, Marks & Gillies, Montpelier, VT, for plaintiffs-appellants.
 Brian J. Sullivan, Burak Anderson & Melloni, Burlington, VT., for defendant-appellee NYNEX Mobile Limited Partnership 1.
 John P. Cain, McCormick, Fitzpatrick, Kasper & Burchard, Burlington, VT., for defendant-appellee Burlington Broadcasters, Inc.
 (Senator Patrick Leahy, Senator James Jeffords, U.S. Senate, Washington, D.C., Congressman Bernie Sanders, U.S. House of Representa-tives, Washington, D.C. submitted a brief for amici curiae in support of plaintiffs-appellants).
 (Christopher J. Wright, Gen. Counsel, Daniel M. Armstrong, Assoc. Gen. Counsel, Joel Marcus, Federal Communications Commission, Washington, D.C.; Joel I. Klein, Asst. Atty. Gen., Robert B. Nicholson, Marion L. Jetton, U.S. Department of Justice, Washington, D.C., submitted a brief for amicus curiae Federal Communications Commission).
 Before: NEWMAN, WALKER and SOTOMAYOR, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This appeal raises a preemption issue pitting federal authority in the field of radio communications against local zoning authority. The precise issue is whether the Federal Communications Act of 1934, as amended (FCA), and regulations promulgated by the Federal Communications Commission (FCC) preempt a local zoning board's power to enforce a condition of a permit to construct and use a communications tower; the permit condition requires the permittees to remedy any radio frequency interference ("RF interference" or "RFI") from tower signals with appliances and devices in local homes. Appellees Burlington Broadcasters ("WIZN"), Charlotte Volunteer Fire & Rescue Services ("CVFRS"), and NYNEX Mobile Limited Partnership[1] dba Bell Atlantic NYNEX Mobile ("BANM") transmit radio signals from a tower in Charlotte, Vermont. The Appellants, homeowners living near the tower ("Homeowners"), appeal from a judgment by the United States District Court for the District of Vermont (William K. Sessions, III, District Judge), dismissing, after removal from the Vermont Environmental Court, their appeal from a decision of the Town of Charlotte's Zoning Board of Adjustment ("ZBA") that held the condition unenforceable. See In re Freeman, 975 F. Supp. 570 (D. Vt. 1997). We agree with both the local agency and the District Court that federal law preempts enforcement of the permit condition, but we conclude that the appropriate disposition is not to dismiss the removed appeal, but to affirm the ZBA's decision on the preemption issue.
 
 Background
 
 2
 Facts. The underlying facts are largely undisputed. Appellee WIZN operates a radio station under an FCC license, which authorizes WIZN to broadcast from a 199-foot tower in Charlotte. Appellee BANM transmits cellular telephone calls from four 13-foot "whip" antennas mounted on the tower. Appellee CVFRS uses tower transmitters intermittently in connection with providing fire and ambulance services to the Town of Charlotte.
 
 
 3
 In late 1986, WIZN and CVFRS sought a permit from the Town of Charlotte to build a tower on Pease Mountain and to transmit radio signals from it. At a hearing to discuss the matter, a WIZN representative assured concerned townspeople that there would not be any RF interference with their home electronic devices, and that if such interference occurred, WIZN would "trap it out." The phenomenon of RF interference is explained in the legislative history of the 1982 Amendments to the FCA: "Radio frequency interference ... arises when a signal radiation by a transmitter is picked up by an electronic device in such a manner that it prevents the clear reception of another and desired signal or causes malfunction of some other electronic device." H.R. Conf. Rep. No. 97-765, at 21 (1982), reprinted in 1982 U.S.C.C.A.N. 2261, 2265.
 
 
 4
 In January 1987, the Town of Charlotte's Zoning Board of Adjustment ("ZBA") issued WIZN and CVFRS a permit to construct and use the tower on the express condition that "any interference with reception in homes in the area because WIZN began broadcasting will be remedied by WIZN." After the tower was built, WIZN conveyed ownership to CVFRS. In April 1987, WIZN began broadcasting from space on the tower leased to it by CVFRS. In 1991, BANM's predecessor and CVFRS received approval from the ZBA to mount four whip antennas on the tower for the purpose of cellular phone signal transmission. Although a representative of CVFRS orally assured the ZBA that the antennas would cause no interference, BANM was not required to agree to any conditions concerning RF interference.
 
 
 5
 State administrative proceedings. On April 5, 1996, in response to a considerable number of RF interference complaints by the Appellants and other Charlotte residents, the Charlotte Zoning Administrator issued a notice of violation to WIZN, BANM, CVFRS, and the landowner. The notice alleged that the facility caused long-term and continuous RF interference in violation of the condition of WIZN's permit.
 
 
 6
 The cited parties appealed the notice of violation to the ZBA, which conducted public hearings in May 1996 pursuant to Vt. Stat. Ann. tit. 24, 4467 (1992 & Supp. 1999). The Homeowners, the Appellants in the pending appeal, appeared as "interested persons" under id. 4464(b) and identified various RF interference problems with their household electrical and electronic devices. On July 11, 1996, the ZBA issued its Notice of Decision. The ZBA found that
 
 
 7
 WIZN has caused continuous and widespread RFI that has impaired the ability of Charlotte residents to communicate, transact business, and experience the peaceful enjoyment of their homes and property. In addition, the Board finds that these individuals have expended substantial amounts of money in their attempts to remedy interference problems.
 
 
 8
 Notice of Decision at 5. The ZBA also commented on WIZN's sluggishness in responding to complaints. The ZBA noted that "[w]hile WIZN successfully reduced and/or eliminated RFI in some cases, other Charlotte residents continue to experience annoying, costly, and burdensome interference problems." Id. However, the ZBA found "no credible evidence" demonstrating that any of the other cited parties -- CVFRS, BANM, and the landowner -- caused RF interference. Id.
 
 
 9
 Although the ZBA found that WIZN was in violation of the condition of its permit, the ZBA also concluded that its authority to enforce the permit condition was preempted by the federal government's occupation of the field of RF interference regulation. The ZBA also noted that Vermont law provides that, under some circumstances, co-permittees and property owners are jointly liable for violations, but found that any such co-permittee liability was also subject to preemption.
 
 
 10
 The Homeowners and the Town of Charlotte appealed the decision of the ZBA to the Vermont Environmental Court pursuant to Vt. Stat. Ann. tit. 24, 4471 (1992 & Supp. 1999). In addition to challenging the preemption decision concerning enforceability of the permit condition, the parties argued that state or local jurisdiction existed over claims of fraud, deceit, or misrepresentation against WIZN, BANM, and CVFRS, and that Charlotte residents had been denied unspecified consumer rights. The Homeowners also challenged the ZBA's factual finding that only WIZN, and not CVFRS, BANM, and the property owner, caused the RF interference.
 
 
 11
 District Court proceedings. Before decision by the Vermont Environmental Court, the Appellees removed the case to the District Court. 1 BANM moved to dismiss, pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, and, pursuant to Rule 12(b)(6), for failure to state a claim. WIZN also moved to dismiss for failure to state a claim. CVFRS joined both motions. The thrust of all the Appellees' arguments was that pervasive federal regulation preempted enforcement of the locally imposed condition. The District Court recognized its obligation to consider subject matter jurisdiction, but did so primarily by inquiring whether local regulation of RF interference was federally preempted. The Court concluded that federal law conferred exclusive jurisdiction on the FCC to regulate RF interference. Turning to the Homeowners' allegation of fraud and deceit, based on the Appellees' promise to the ZBA either to avoid RF interference with home devices or eliminate it, the Court distinguished between the Homeowners' possible remedies; to the extent that they sought the remedy of eliminating RF interference, the Court ruled that such a remedy was preempted, and to the extent they were seeking (or even had standing to seek) any other relief, their claims "were not part of the proceeding from which they appealed, and are not properly before this Court." Freeman, 975 F. Supp. at 576. Based on its preemption ruling and its ruling that any non-preempted remedy for fraud and deceit was outside the scope of the state court appeal, the District Court dismissed the removed case for lack of subject matter jurisdiction.
 
 Discussion
 I. Subject Matter Jurisdiction
 
 12
 A. Jurisdiction Based on the Preemption Issue
 
 
 13
 Although neither party has questioned the District Court's subject matter jurisdiction, the matter is not self-evident, and we are obliged to consider it. See Fax Telecommunicaciones Inc. v. AT&T, 138 F.3d 479, 485 (2d Cir. 1998). And, although an objection to the propriety of removal is forfeited by failure to assert it, see id. at 487-88, subject matter jurisdiction must exist, if not at the time of removal, then at least at the time the District Court entered judgment, see Grubbs v. General Electric Credit Corp., 405 U.S. 699, 705 (1972); Fax Telecommunicaciones, 138 F.3d at 488.
 
 
 14
 The Appellees removed from the Vermont Environmental Court a civil action brought to that court by the appeal of the Homeowners from the administrative ruling of the ZBA. An appeal of an administrative ruling to a state court is removable to a federal district court so long as the complaint to the state court presents a well-pleaded claim arising under federal law. See City of Chicago v. International College of Surgeons, 522 U.S. 156, 163-64 (1997).
 
 
 15
 Whether the pending case satisfies the standard of City of Chicago merits careful consideration. City of Chicago, although involving review of an agency decision, presented a traditional federal-question case: the state court plaintiff's complaint alleged that the action of the defendant (a city agency) and the ordinance under which the defendant acted violated the plaintiff's constitutional rights. As the Supreme Court explained, even though state law (Illinois's Administrative Review Law) created the plaintiff's cause of action, that cause of action nonetheless arose under federal law because the plaintiff's "'right to relief under state law require[d] resolution of a substantial question of federal law.'" Id. at 164 (quoting Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 13 (1983)).
 
 
 16
 The pending case differs from City of Chicago in three respects. First, unlike the state court plaintiff in City of Chicago, who filed a complaint, the Homeowners invoked the jurisdiction of the Vermont Environmental Court by filing a notice of appeal. That technical difference is irrelevant for purposes of determining the district court's removal jurisdiction. District courts have original jurisdiction over federal claims seeking review of an administrative decision, whether the court case is initiated by a complaint, see, e.g., 42 U.S.C. 405(g) (authorizing action to "review" final decision of Commissioner of Social Security), or a petition for review, see, e.g., 28 U.S.C. 2344 (authorizing action to "review" final order of various federal agencies).
 
 
 17
 Second, the plaintiff's initial pleading in the state court in City of Chicago set forth a cause of action, whereas the Homeowners presented their issues to the Vermont Environmental Court by a Statement of Questions, pursuant to the required local procedure. See Vt. R. Civ. P. 76(e)(4)(B) (Supp. 1999). Although a "Statement of Questions" does not present a claim that may be examined to determine if it arises under federal law in quite the same manner as a "complaint" asserting a cause of action, this technical difference also provides no basis for rejecting federal subject matter jurisdiction. The well-pleaded complaint rule is concerned with the existence of a federal question on the face of the document invoking a state court's jurisdiction, not whether that document bears the label "complaint."
 
 
 18
 Arguably more significant is a third distinction: the issue tendered to the Illinois state court in City of Chicago was whether the local agency's ordinance or action violated the Constitution, whereas the issue tendered to the Vermont Environmental Court was whether federal law preempted enforcement of the condition of the Appellees' permit. The preemption issue was initially tendered in this case when it was asserted by the Appellees before the ZBA as a defense to the Zoning Administrator's notice of violation. Under the "well-pleaded complaint" rule, see Franchise Tax Board, 463 U.S. at 9; Gully v. First National Bank, 299 U.S. 109, 113 (1936) ("[T]he controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal."), a state law complaint, filed in a state trial court, that tries to anticipate a defense of federal preemption will not support federal question removal jurisdiction, see Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987); Gully, 299 U.S. at 116 ("By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby."), unless the limited doctrine of "complete preemption" applies, see Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 63-64 (1987). Under that doctrine, the plaintiff's state law claim, recharacterized pursuant to the "artful pleading" rule, see Travelers Indemnity Co. v. Sarkisian, 794 F.2d 754, 758 (2d Cir. 1986), is said necessarily to arise under federal law, regardless of how the plaintiff has pled the claim, see Metropolitan Life, 481 U.S. at 63-64. In the FCA context, we have ruled that the "complete preemption" doctrine does not apply with respect to state law billing claims and other business practice claims. See Fax Telecommunicaciones, 138 F.3d at 486; Marcus v. AT&T Corp., 138 F.3d 46, 53 (2d Cir. 1998). It is arguable, however, that the complete preemption defense applies to state law claims that concern technical aspects of electronic transmissions, and we might well support subject matter jurisdiction in this case on that basis. We need not do so, however, because of an alternative basis for satisfying the well-pleaded complaint rule.
 
 
 19
 Although the preemption issue was initially asserted defensively by the Appellees at the administrative level, later, when the Homeowners invoked the jurisdiction of the Vermont Environmental Court, they did so by tendering the preemption issue affirmatively as the initial question to be decided in their effort to reverse the decision of the ZBA. After explaining that the ZBA had ruled that the condition of WIZN's permit was void because of federal preemption, the Homeowners' Statement asked as a first question, "Does federal law preempt state and local jurisdiction over interference?" Although it is arguable that the defensive nature of the preemption issue when first injected into the case at the agency level should govern throughout the litigation, at least for purposes of determining federal question jurisdiction, we think the better approach is to permit removal when a litigant's initial entrance to a state court seeks a decision that an administrative ruling upholding a federal preemption defense is erroneous.[2] Our view rests on the reason why the well-pleaded complaint rule has been fashioned to bar anticipation of a federal defense.
 
 
 20
 The well-pleaded complaint rule is usually justified as a protection against the undue expansion of federal court jurisdiction that would occur if a plaintiff with only a state law claim could invoke federal jurisdiction simply by speculating that the defendant might assert a federal defense. See, e.g., Richard H. Fallon et al., Hart and Wechsler's The Federal Courts and the Federal System 910-11 (4th ed. 1996) ("Hart and Wechsler") (well-pleaded complaint rule "designed to avoid making original jurisdiction turn on speculation as to what issues will be decisive in the litigation") (footnote omitted). However, after a state or local agency has considered a federal defense, such as preemption, tendered by a defendant, and ruled that the defense is valid, the reason for the well-pleaded complaint rule has been substantially diminished: the federal defense is no longer merely a matter of speculation.[3] Thus, when the Homeowners sought judicial review of the ZBA's preemption ruling, the federal defense had been adjudicated, and the Homeowners entered the state court to obtain judicial review of the agency ruling. They were not merely seeking a declaratory judgment from the Vermont Environmental Court, which might well not have been removable,[4] but rather exercising their state law right to obtain judicial review of agency action, the same procedural route that justified removal in City of Chicago. And, as in City of Chicago, the state court suit, though authorized by state law, arose under federal law because of the nature of the federal question on which the outcome depended.
 
 
 21
 The logic of permitting removal once a federal defense has been adjudicated could arguably be invoked to justify removal of a state court appeal from a state trial court decision adjudicating a federal defense.[5] However, removal of such an appeal would encounter the obstacle of the Rooker/Feldman doctrine, prohibiting a federal district court from exercising appellate jurisdiction over a state court. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 474 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). Since this case involves removal of a case pending in a state court of first instance, seeking review of an agency decision adjudicating a federal issue, it could have been brought originally in a district court, and is therefore properly removable. See 28 U.S.C. 1441(a) (1994). We also observe that had the state agency adjudicated the federal issue adversely to the Appellees, they could have brought an action in the District Court to enjoin enforcement of the condition of the zoning permit. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14 (1983).
 
 B. Jurisdiction Based on Other Issues
 
 22
 In addition to tendering the preemption issue to the Vermont Environmental Court, the Homeowners also raised other issues: (1) whether BANM and CVFRS have caused RF interference? (2) Whether BANM and CVFRS bear joint liability with WIZN as co-permittees? (3) Whether WIZN, BAMN, and CVFRS are subject to state or local jurisdiction for fraud, deceit, and misrepresentation arising from the promises made when the permit was issued? (4) Whether WIZN, BAMN, and CVFR have violated some unspecified consumer rights?
 
 
 23
 These issues raise only state law questions.[6] City of Chicago instructs that, where a removal petition properly invokes a district court's subject matter jurisdiction over matters initially presented to an administrative agency, that court's authority to consider other issues turns on traditional considerations applicable to the exercise of supplemental jurisdiction under 28 U.S.C. 1367(a). See City of Chicago, 522 U.S. at 164-65. Since the federal claim (that the ZBA's preemption ruling is erroneous) failed at the outset in the District Court, it would be inappropriate to exercise supplemental jurisdiction with respect to the state law claims, especially in a removed case like this one, where a federal court would be obliged to consider the extent to which such claims had been sufficiently tendered to the ZBA to make them available for review in the Vermont Environmental Court. We consider in Part III the consequence of not exercising such jurisdiction.
 
 II. Federal Preemption
 
 24
 This Circuit has not yet confronted the issue whether federal law preempts state and local regulation of RF interference. Of the various forms of federal preemption, the most pertinent to the pending inquiry is so-called "field preemption": state law is preempted when the "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). As is always the case in preemption analysis, Congressional intent is the "ultimate touchstone." Cippolone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (internal quotation marks and citations omitted). Consistent with this view of the importance of congressional intent, the Supreme Court has explained that "field pre-emption may be understood as a species of conflict pre-emption: a state law that falls within a pre-empted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulation." English v. General Electric, 496 U.S. 72, 79 n.5 (1990); see also 1 Laurence H. Tribe, American Constitutional Law 6-31 (3d ed. 1999).
 
 
 25
 For the reasons below, we conclude that federal law has preempted the field of RF interference regulation.
 
 
 26
 The FCC's Statutory Authority to Regulate Radio Broadcasting. Several statutory provisions indicate the extent of the FCC's authority and responsibility to regulate radio broadcasting. 47 U.S.C. 151 states the purposes of the FCA, among them to "centraliz[e] authority heretofore granted by law to several agencies" in the FCC, and to "grant[] additional authority with respect to interstate and foreign commerce in wire and radio communication" to the FCC. Section 301[7] provides that "it is the purpose of this chapter, among other things, to maintain the control of the United States over all the channels of radio transmission" under licenses granted by the FCC in accordance with the FCA. Subsection 307(b) requires the FCC to "make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each."
 
 
 27
 Moreover, under subsection 302a(a)(1), the FCC has power to "make reasonable regulations ... governing the interference potential of devices which in their operation are capable of emitting radio frequency energy by radiation, conduction, or other means in sufficient degree to cause harmful interference to radio communications." Section 303 grants extensive powers to the FCC to regulate radio broadcasting technology and RF interference phenomena. Among other powers, subsection 303(d) empowers the FCC to "[d]etermine the location of classes of stations or individual stations." Subsection 303(e) empowers the FCC to "[r]egulate the kind of apparatus to be used with respect to its external effects and the purity and sharpness of the emissions from each station and from the apparatus therein." Subsection 303(f) allows the FCC to "[m]ake such regulations not inconsistent with law as it may deem necessary to prevent interference between stations and to carry out the provisions of this chapter." Subsection 303(h) confers "authority to establish areas or zones to be served by any station."
 
 
 28
 These statutory provisions make it clear that Congress intended the FCC to possess exclusive authority over technical matters related to radio broadcasting. See Head v. New Mexico Board of Examiners in Optometry, 374 U.S. 424, 430 n.6 (1963); Broyde v. Gotham Tower, Inc., 13 F.3d 994, 997 (6th Cir. 1994). This authority is embedded in the FCC's broad authority to develop a comprehensive national regulatory system governing telecommunications. See, e.g., National Broadcasting Co. v. United States, 319 U.S. 190, 219-20 (1943); FCC v. Pottsville Broadcasting Co., 309 U.S. 134, 137 (1934).
 
 
 29
 Moreover, the legislative history of the 1982 Amendments to the FCA, Pub. L. No. 97-259, 96 Stat. 1087 (1982), supports the conclusion that Congress's grant of authority to the FCC was intended to be exclusive and to preempt local regulation. The House Conference Report states with respect to enacting section 302a, which empowers the FCC to set manufacturing standards for home electronic equipment to minimize the RF interference effects of signals from nearby transmitters:
 
 
 30
 The Conference Substitute is further intended to clarify the reservation of exclusive jurisdiction to the Federal Communications Commission over matters involving RFI. Such matters shall not be regulated by local or state law, nor shall radio transmitting apparatus be subject to local or state regulation as part of any effort to resolve an RFI complaint. The Conferees believe that radio transmitter operators should not be subject to fines, forfeitures or other liability imposed by any local or state authority as a result of interference appearing in home electronic equipment or systems. Rather, the Conferees intend that regulation of RFI phenomena shall be imposed only by the Commission.
 
 
 31
 H.R. Conf. Rep. No. 97-765, at 33 (1982), reprinted in 1982 U.S.C.C.A.N. 2261, 2277. This statement from the legislative history is consistent with our inference of complete preemption from Congress's comprehensive legislation in the field and Congress's explicit delegation of authority to the FCC to regulate the instrumentalities of radio broadcasting throughout the United States.
 
 
 32
 The FCC's Regulation of RF Interference Through Rule-making. Federal regulations have the same preemptive force as federal statutes. See Fidelity Savings and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153-54 (1983). The FCC has exercised its rule-making power to extensively regulate the technologies involved in FM broadcasting. See, e.g., 47 C.F.R. 73.201-73.333 (1998). These rules govern, among other things, the power and height of antennas, see id. 73.211, the use of common antenna sites, see id. 73.239, and FM transmitter locations, see id. 73.315. Most significantly, the FCC regulates "FM blanketing interference," which is the sort of interference complained of by the Homeowners. See id. 73.318. The FCC first defines the area assumed to be blanketed by radio emissions as a function of the effective radiated power of the antenna. Notably, the FCC imposes a requirement that licensees remedy the RF interference occurring in that area: "[P]ermittees or licensees who ... are issued a new construction permit must satisfy all complaints of blanketing interference which are received by the station during a one-year period. ... Resolution of complaints shall be at no cost to the complainant." Id. 73.318(b).[8] Following the one-year period, the licensee or permittee must provide technical information or assistance to complainants concerning remedies for interference. See id. 73.318(d). Finally, pursuant to an explicit grant of authority under subsection 302a(a)(1), the FCC has promulgated extensive regulations governing devices that emit either intentional or incidental RF interference. See 47 C.F.R. pt. 15 (1998).
 
 
 33
 In light of our conclusion that Congress intended that the FCC enjoy exclusive jurisdiction to regulate RF interference phenomena, the FCC's regulations cannot be said to be anything other than reasonable interpretations of the scope of FCC authority, and thus are entitled to deference under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).
 
 
 34
 The FCC's Interpretation of the Scope of Preemption. An agency's interpretation of an ambiguous statute it is charged with administering is entitled to Chevron deference not only when the agency interprets through rule-making, but also when it interprets through adjudication. See Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council, 485 U.S. 568, 574 (1988). To whatever extent any ambiguity exists in the FCA, the FCC has resolved this ambiguity in favor of federal preemption of RF interference issues. Cf. City of New York v. FCC, 486 U.S. 57, 64 (1988) ("If the agency's choice to pre-empt represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.") (citation and internal quotation marks omitted). In In re Mobilecomm of New York, Inc., 2 F.C.C.R. 5519 (Common Carrier Bureau 1987), the FCC examined two sections of the Code of the Town of Wilton, Connecticut, that purported to regulate RF interference. Wilton's Code required that a paging signal transmitter notify the Town's Planning and Zoning Commission when it changed the power and/or frequency of its transmission, and provided that "[n]o operation shall be permitted which produces any perceptible electromagnetic interference with normal radio or television reception in any area within or without the town." Id. 3 n.3. The FCC determined that Wilton's rule was preempted by federal law, see id. 8-11, and rejected Wilton's argument that its zoning regulations were "reasonably tailored police powers necessarily enacted for the protection of town residents." Id. 5. See also In re 960 Radio, Inc., FCC 85-578 3, 1985 WL 193883 (1985) (holding that FCC's exclusive jurisdiction over RF interference between two radio stations preempted enforcement of use permit conditioned on station's "not operat[ing] [its] new facility so as to produce electronic interference to existing facilities").
 
 
 35
 The Homeowners' Arguments That Federal Law Authorizes Local Regulation of RF Interference. The Homeowners make three arguments that federal law expressly or impliedly exempts from preemption state and local regulations like the permit condition at issue. We disagree with these arguments.
 
 
 36
 First, the Homeowners rely on the 1982 Amendments, which, among other things, grant the FCC authority to promulgate performance standards for consumer electronic equipment. See 47 U.S.C. 302a(a)(2). The Appellants argue that this limited grant of authority reflects a conscious decision by Congress to confer on the FCC exclusive power to set standards for consumer electronic equipment but not business electronic equipment, leaving RF interference affecting business electronic equipment available for local regulation. Because the ZBA found that the WIZN signal interfered with equipment used for business, the argument continues, the condition on WIZN's permit is not preempted by federal law or regulations.
 
 
 37
 This argument is untenable. Although Congress limited the FCC's standard-setting authority to consumer electronic equipment, this limited grant of authority concerns devices that receive RF interference, not devices that emit radio signals. Thus, were we to infer from the statute's inclusion of consumer electronic equipment the exclusion of business electronic equipment, we would conclude at most that Congress did not intend the FCC to have power to set standards (for the manufacture of business electronic devices) that would minimize malfunctions caused by the receipt of RF interference.[9] This is an altogether different matter from the regulation of radio transmitters emitting radio signals that are the source of RF interference in recipient devices. In fact, Congress explicitly granted the FCC authority to regulate RF emissions causing interference. See 47 U.S.C. 302a(a)(1). Finally, we note that the provision relied upon by the Homeowners was passed as part of the 1982 Amendments. The Conference Report for these amendments, quoted above, explicitly states Congress's intent to preempt any local or state attempts to regulate or remedy RF interference.
 
 
 38
 Second, the Homeowners argue that the 1996 Amendments "preserve" local zoning authority over RF emissions. They point to two provisions: one provision concerns wireless telephones (and thus implicates the Homeowners' claim against BANM) and the other concerns common carrier regulations.
 
 
 39
 The Homeowners argue that the wireless telephone provisions in the 1996 Amendments affect the analysis whether the ZBA has the authority to regulate RF interference attributable to BANM.[10] They point to subsection 332(c)(7)(A), entitled "Preservation of local zoning authority," which states:
 
 
 40
 Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless services facilities.
 
 
 41
 Thus, Congress did preserve some local zoning authority over the placement of wireless services transmitters like BANM's. However, we conclude that Congress did not intend by this provision to repeal the FCC's exclusive jurisdiction over RF interference complaints. The statute's preservation of local power extends only to "placement, construction and modification" of "facilities." In light of the FCC's pervasive regulation of broadcasting technology, this provision is most reasonably understood as permitting localities to exercise zoning power based on matters not directly regulated by the FCC. Cf. AT&T Wireless PCS, Inc. v. City of Virginia Beach, 155 F.3d 423, 427 (4th Cir. 1998) (upholding under this provision city's denial of building permit to wireless services provider, when that denial rested on "traditional bases of zoning regulation: preserving the character of the neighborhood and avoiding aesthetic blight"). Moreover, this interpretation is supported by the express provision in the 1996 Amendments forbidding implied repeal:
 
 
 42
 (c) Federal, state, and local law. --
 
 
 43
 (1) No implied effect. -- This Act and the amendments made by this Act shall not be construed to modify, impair, or supersede Federal, State, or local law unless expressly so provided in such Act or amendments.
 
 
 44
 Pub. L. No. 104-104, 601, 110 Stat. 56, 143 (1996) (codified in notes to 47 U.S.C. 152 (1994 & Supp. 1997)). It would contravene this provision to find that subsection 332(c)(7) impliedly repeals the FCC's exclusive authority to regulate RF interference. We note also that the legislative history indicates that this preservation of authority "relate[s] to local land use regulations and [is] not intended to limit or affect the Commission's general authority over radio telecommunications, including the authority to regulate the construction, modification and operation of radio facilities." H.R. Conf. Rep. No. 104-458, at 209 (1996), reprinted in 1996 U.S.C.C.A.N. 124, at 223.
 
 
 45
 The amicus brief of the Vermont Senators and Congressman also cites subsection 332(c)(7) in arguing against the ZBA's preemption ruling. Their point is that no provision similar to this subsection, which concerns personal wireless service, can be found regarding the "siting" of radio broadcast towers. Brief of Amicus Curiae Leahy et al. at 4. However, the preexisting pervasive federal regulation of RF interference suffices to resist any negative implication that might otherwise be drawn from subsection 332(c)(7). Moreover, local authority over siting of broadcast towers, based on considerations not within the exclusive regulatory authority of the FCC, remains unimpaired.
 
 
 46
 The Homeowners also point to the 1996 Amendments' common carrier regulations, codified in section 253 and reading in part:
 
 
 47
 (a) In general. No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.
 
 
 48
 (b) State regulatory authority. Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.
 
 
 49
 The Homeowners argue that these provisions, particularly subsection (b), "preserve" the right of a state to impose RF interference conditions because those conditions "protect the public safety and welfare." This argument is unavailing. The section at issue is contained in the statutory subchapter entitled "Common Carriers" and the part entitled "Development of Competitive Markets." The section concerns the provision of local telephone service and the impermissibility of state-created barriers to competitive markets. It has nothing to do with RF interference. Moreover, the legislative history indicates that "[b]y 'public safety and welfare,' the Committee means, among other things, making certain that emergency services, such as 911, are available to the public." H.R. Rep. No. 104-204, at 75 (1995), reprinted in 1996 U.S.C.C.A.N. 10, at 41.
 
 
 50
 Third, the Homeowners argue that the FCC has expressly declined to regulate or to preempt local regulation of radio frequency matters affecting safety. They point to the following explanatory portions of an FCC proposed rule, and argue that it establishes that the FCC intended to preserve state and local regulations affecting health and safety:
 
 
 51
 164. In the past, parties have requested that the Commission preempt state and local authority over RF exposure matters. To date the Commission has declined to preempt on health and safety matters. However, the Commission has noted that should non-Federal RF radiation standards be adopted that adversely affect a licensee's ability to engage in Commission-authorized activities, the Commission would consider reconsidering whether Federal action is necessary.
 
 
 52
 ...
 
 
 53
 166. Decision. In the past the Commission has hesitated to intrude on the ability of states and localities to make regulations affecting health and safety. Many of the comments indicate that a patchwork of divergent local and State regulations could pose a burden on interstate communications. However, since these comments were filed, Congress has passed the Telecommunications Act of 1996. ... Section 704 of the Telecommunications Act amends the Communications Act by providing for federal preemption of state and local regulation of personal wireless service facilities on the basis of RF environmental effects. The Telecommunications Act also provides for resolution of conflicts related to the regulation of RF emissions by the courts or by petition to the Commission. Accordingly, we are amending 1.1307 of our rules to incorporate the provisions of Section 704 of the Telecommunications Act.
 
 
 54
 Guidelines for Evaluating the Environmental Effects of Radiofrequency Radiation, 58 Fed. Reg. 19,393 (1993) (codified at 47 C.F.R. pt. 1, 2, 15, 24, 97) (adopted Aug. 5, 1996) (footnotes omitted).
 
 
 55
 The Homeowners misunderstand the meaning of "health and safety" in this context. This term is used in conjunction with the term "environmental effects," which is not defined in the statute but most likely refers to the already-existing requirement that the FCC prepare an Environmental Assessment in connection with the grant of a license. See 47 C.F.R. 1.1307 (1998). The environmental effects specified by the regulations do not include RF interference, but rather focus on degradation of the natural environment, effects on historical landmarks, and the biological effects of RF radiation. Consequently, the FCC's adoption or rejection of a position with respect to that issue has no relevance to the issue of RF interference.
 
 
 56
 We conclude that allowing local zoning authorities to condition construction and use permits on any requirement to eliminate or remedy RF interference "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Fidelity Savings & Loan Ass'n, 458 U.S. at 152 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)) (internal quotation marks omitted), in delegating regulatory power to the FCC for uniform regulation of broadcast technologies. At least one other court has agreed with this view with respect to local zoning permits. See Southwestern Bell Wireless Inc. v. Board of County Commissioners, 199 F.3d 1185, 1193 (10th Cir. 1999). Other courts have reached the same conclusion when faced with the question whether federal law preempts state common law nuisance actions purporting to regulate RF interference. See Broyde, 13 F.3d at 998; Still v. Michaels, 791 F. Supp. 248, 252 (D. Ariz. 1992) (alternate holding); Still v. Michaels, 803 P.2d 124, 125 (Ariz. Ct. App. 1990); Helm v. Louisville Two-Way Radio Corp., 667 S.W.2d 691, 693 (Ky. 1984); Blackburn v. Doubleday Broadcasting Co., 353 N.W.2d 550, 556-57 (Minn. 1984); Smith v. Calvary Educational Broadcasting Network, 783 S.W.2d 533, 536-37 (Mo. Ct. App. 1990); Monfort v. Larson, 693 N.Y.S.2d 286, 289 (N.Y. App. Div. 1999); Fetterman v. Green, 689 A.2d 289, 294 (Pa. Super. Ct.), appeal denied, 695 A.2d 786 (1997); cf. Goforth v. Smith, 991 S.W.2d 579, 583-84 (Ark. 1999) (state law action to remedy environmental effects of RF emissions preempted).
 
 
 57
 As the ZBA noted, see Notice of Decision at 8 n.2, preemption of the permit condition does not leave the Homeowners without a remedy. Federal regulations impose a continuing duty on WIZN to provide technical assistance to residents within the blanketing interference area to resolve RF interference problems. See 47 C.F.R. 73.318(d) (1998). In the first year of any new or upgraded transmitter's operation, the transmitting station must satisfy all complaints of blanketing interference with most common devices at no cost to the complainant. See id. 73.318(b). In addition, the Homeowners may file informal requests for action with the FCC. See id. 1.41. They may also ask the FCC to deny renewal of WIZN's license on the ground that the interference is so severe that it violates the public interest. See 47 U.S.C. 307(c)(1); Broyde, 13 F.3d at 998. Judicial review of FCC decisions and orders is available in the United States Court of Appeals for the District of Columbia Circuit. See 47 U.S.C. 402(b).
 
 III. Consequence of Preemption
 
 58
 The District Court ruled that, because local enforcement of the condition of WIZN's permit was preempted, the Court lacked subject matter jurisdiction. Though the Court lacked jurisdiction to grant any relief with respect to the Homeowners' claim to remedy the RF interference, it did not lack jurisdiction to rule, as it correctly did, that the permit condition was preempted and that any attempt to obtain a federal or state law remedy that regulates RF interference was preempted. Having made that ruling, the proper disposition in the removed case was to affirm the ruling of the ZBA, which had also ruled the permit condition preempted. Although the preemption issue was raised by motions to dismiss pursuant to Rules 12(b)(1) and (6), the resolution of the issue in favor of the Appellees, after full consideration, left nothing further to be done on the federal issue, and at that point at least a partial summary judgment for the Appellees was warranted. We need not consider whether the state law issues should have been remanded to the Vermont Environmental Court, because the Homeowners have not sought that relief on this appeal. The only relief sought by the Homeowners in this Court is reversal of the District Court's preemption ruling.
 
 Conclusion
 
 59
 For the foregoing reasons, the ruling of the District Court on the preemption issue is affirmed, and the judgment dismissing the removed case is modified to reflect that the decision of the ZBA on the preemption issue is affirmed. The Appellees may recover their costs.
 
 
 
 Notes:
 
 
 [1]
 The Town of Charlotte sought and received permission to withdraw from the case.
 
 
 [2]
 The procedural posture of this case is to be distinguished from that of a plaintiff entering state court to seek a declaratory judgment that a defendant's anticipated preemption defense to the plaintiff's state law claim is unavailing. That would be the classic anticipation of a federal defense that the well-pleaded complaint rule bars. In the pending case, a local governmental agency has ruled that the preemption defense is valid. The state court plaintiffs want not only a decision on the preemption defense; they want a court to reverse an adverse administrative ruling that is grounded on federal law.
 
 
 [3]
 The Hart and Wechsler treatise pointedly queries, "[D]id it make sense to apply the rule where, as in [Louisville & Nashville R. Co. v.] Mottley[, 211 U.S. 149 (1908)] itself, the jurisdictional issue arose for the first time on appeal, at a time when both parties and the court below agreed that the case turned entirely on federal issues?" Hart and Wechsler at 911 n.5.
 
 
 [4]
 Removal of a declaratory judgment action normally turns on whether the coercive action as to which a declaration is sought would have stated a federal claim on the face of the complaint. See Franchise Tax Board, 463 U.S. at 17-22 (rule of Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950), applies to state court declaratory judgment actions). Attempted removal of a state court declaratory judgment action in the pending case would have encountered the objection that the coercive enforcement action to which the declaratory judgment action related would have been the enforcement suit by the Zoning Enforcement Officer, a suit that would not have included a federal claim.
 
 
 [5]
 Adjudication of a federal defense in a suit not otherwise within the jurisdiction of a federal court (where no party challenges federal jurisdiction) does not create federal question jurisdiction. See Mottley, 211 U.S. at 152.
 
 
 [6]
 In presenting the fourth issue, denial of unspecified consumer rights, to the Vermont Environmental Court, the Homeowners made a passing reference to federal law by citing a provision of the Telecommunications Act of 1996, Pub. L. 104-104, 101(a), 110 Stat. 56, 70 (1996) (codified at 47 U.S.C. 253(b) (Supp. 1997)), which provides: "Nothing in this section shall affect the ability of a State to impose . . . requirements necessary to . . . safeguard the rights of consumers." The "section" to which subsection 253(b) refers concerns access to the provision of telecommunications service. See 47 U.S.C. 253(a). It has nothing to do with radio transmissions. The Appellants wisely do not pursue on appeal any claim that subsection 253(b) creates subject matter jurisdiction. We consider in Part II the effect of section 253 on the merits of the preemption issue.
 
 
 [7]
 Unless otherwise indicated, all statutory sections cited are in Title 47.
 
 
 [8]
 The FCC excludes complaints resulting from malfunctioning or improperly used receivers and antenna systems, mobile receivers, tape recorders and phonographs, and high gain antennas or antenna booster amplifiers. See 47 C.F.R. 73.318(b).
 
 
 [9]
 The legislative history reveals that Congress was responding to increasing complaints concerning RF interference with home electronic equipment. However, Congress determined that business equipment manufacturers were already adequately safeguarding their electronic equipment from RF interference, and that FCC standard-setting was not necessary to resolve that problem. See H.R. Conf. Rep. No. 97-765, at 32-33, 1982 U.S.C.C.A.N. at 2275-76.
 
 
 [10]
 We note that the ZBA found none.