09-1546-cv
N.Y. SMSA Ltd. P'ship v. Town of Clarkstown

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT


August Term 2009


Argued:   March 8, 2010                    Decided:   June 30, 2010

Docket No. 09-1546-cv, 09-1860-cv


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NEW YORK SMSA LIMITED PARTNERSHIP, doing business as Verizon
Wireless, NEW CINGULAR WIRELESS PCS, LLC, SPRINT SPECTRUM L.P.,
and OMNIPOINT COMMUNICATIONS, INC., a wholly owned subsidiary of
T-Mobile USA, Inc.,

                           Plaintiffs-Appellees-Cross-Appellants,

                              v.

TOWN OF CLARKSTOWN and TOWN BOARD OF THE TOWN OF CLARKSTOWN,

                           Defendants-Appellants-Cross-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before:   McLAUGHLIN and CHIN, Circuit Judges.[*]

          Cross-appeals from an order of the United States

District Court for the Southern District of New York (Young,

District Judge[**]) granting plaintiffs-appellees' motion for

summary judgment and denying defendants-appellants' cross-motion

---

[*]      At the time of oral argument, Judge Chin was a United
States District Judge for the Southern District of New York,
sitting by designation.  Judge Rosemary S. Pooler was originally
a member of the panel, but did not participate in the
consideration of this appeal.  The two remaining members of the
panel are in agreement and have determined the matter.  See 28
U.S.C. § 46(d); 2d Cir. Internal Operating Procedure E; United
States v. Desimone, 140 F.3d 457 (2d Cir. 1998).

[**]      Hon. William G. Young, of the United States District
Court for the District of Massachusetts, sitting by designation.

for summary judgment. The district court held that a local law purporting to regulate the construction of wireless telecommunications facilities was preempted by federal communications law.

AFFIRMED.

ANDREW G. McBRIDE (Joshua S. Turner, Jamie A. Aycock, Wiley Rein LLP, Washington, D.C., Christopher B. Fisher, Cuddy & Feder LLP, White Plains, New York, John F. Stoviak, Charles Michael Rowan, Jr., Saul Ewing, LLP, Princeton, New Jersey, Richard M. Fricke, Price, Meese, Shulman & D'Arminio, P.C., Woodcliff Lake, New Jersey, on the brief), for Plaintiffs-Appellees-Cross-Appellants.

EDWARD M. ROSS (Judah Serfaty, Rosenberg Calica & Birney LLP, Garden City, New York, on the brief), for Defendants-Appellants-Cross-Appellees.

PER CURIAM:

In 2007, the Town of Clarkstown in Rockland County, New York (the "Town"), passed a local law governing the installation of wireless telecommunications facilities. The law was intended to give the Town the ability to control visual and aesthetic aspects of wireless telecommunications facilities within the Town, and, in particular, it sought to implement a "preference" in residential areas for smaller and less intrusive antennas. Four national telecommunications service providers brought this action below to challenge the law on the grounds that it was

preempted by federal communications law. The district court agreed, and held that the law was preempted. We affirm.

BACKGROUND

A.   Federal Regulation of Telecommunications

The field of telecommunications -- the electronic transmission of sounds, words, and images, usually over a great distance -- has long been the subject of federal regulation. In 1910, Congress passed the Wireless Ship Act of June 24, 1910, 36 Stat. 629, and the Radio Acts of 1912 and 1927 followed, 37 Stat. 302; 44 Stat. 1162. See Nat'l Broad. Co. v. United States, 319 U.S. 190, 210-13 (1943) (reviewing history of radio acts). In 1934, Congress passed the Communications Act of 1934, 48 Stat. 1064, and thereby created the Federal Communications Commission (the "FCC"). In doing so, Congress sought to create "a unified and comprehensive regulatory system for the industry," "to protect the national interest involved in the new and far-reaching science of broadcasting." Nat'l Broad. Co., 319 U.S. at 213-14 (quoting FCC v. Pottsville Broad. Co., 309 U.S. 134, 137 (1940)). Congress gave the FCC the exclusive authority to grant licenses to telecommunications providers, see 47 U.S.C. § 151, and it "intended the FCC to possess exclusive authority over technical matters related to radio broadcasting," Freeman v. Burlington Broadcasters, Inc., 204 F.3d 311, 320 (2d Cir. 2000).

Most relevant to this case, in 1996, Congress enacted the Telecommunications Act of 1996 (the "Telecommunications Act"), Pub. L. No. 104-104, 110 Stat. 56 (codified at 47 U.S.C. §

151 et seq., as amended). The Telecommunications Act made substantial changes to the federal regulation of telecommunications as Congress sought "to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition." See H.R. Rep. No. 104-458, at 113 (1996), reprinted in 1996 U.S.C.C.A.N. 10, 124. The Telecommunications Act included "new provisions applicable only to wireless telecommunications service providers." Sprint Telephony PCS, LP v. County of San Diego, 543 F.3d 571, 576 (9th Cir. 2008) (emphasis omitted).

In section 332(c)(7) of the Telecommunications Act, Congress preserved the authority of state and local governments over zoning and land use issues, but imposed limitations on that authority. See 47 U.S.C. § 332(c)(7). Section 332(c)(7), entitled "Preservation of local zoning authority," provides:

> Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

47 U.S.C. § 332(c)(7)(A); see H.R. Rep. No. 104-458, at 207-08 (section 332(c)(7) "preserves the authority of State and local governments over zoning and land use matters"). At the same time, however, section 332(c)(7)(B) provides that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local

- 4 -

government or instrumentality thereof (I) shall not unreasonably discriminate among providers of functionally equivalent services; and (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services."  47 U.S.C. § 332(c)(7)(B)(i).

The FCC has promulgated regulations setting forth "technical requirements for use of the spectrum and equipment in the personal communications services."  47 C.F.R. § 24.50.  Its regulations cover matters such as, for example, transmitter type, id. § 24.51, radio frequency radiation exposure, id. § 24.51-52, the height of an antenna above average terrain, id. § 24.53, and the marking and lighting of antenna structures, id. § 24.55.

B.    The Clarkstown Wireless Law

In July 2007, the Town enacted Local Law No. 14 to amend Chapter 251 of the Clarkstown Town Code.  See Chapter 251 of the Clarkstown Town Code, as amended by Local Law No. 14, enacted Jul. 24, 2007.  Chapter 251's stated purpose is to provide the Town with:

> the authority to accommodate and regulate necessary utility infrastructure for the provision of wireless telecommunications facilities within the Town . . . , to encourage the siting of wireless telecommunications facilities in nonresidential areas on existing structures, to address the safety, visual and aesthetic aspects of . . . facilities and to provide for public input in the process of siting . . . towers.

Chapter 251 § 251-10(B).  Chapter 251 also seeks to "establish clear standards for the review and siting" of wireless

- 5 -

telecommunication facilities, and to protect the residential areas of the Town from "unsightly" and "intrusive" facilities. Id. § 251-10(B), (D).

Chapter 251 establishes a multi-stage application process for requests to install, modify, or renew permits for wireless telecommunications facilities within the Town. Applicants for wireless telecommunications permits are pre-screened based on several factors, including their use of "preferred alternate technology," such as a "microcell" or "distributed antenna system" ("DAS"). Id. § 251-15. A DAS consists of a "continuous grid of low-level antennas," NextG Networks of N.Y., Inc. v. City of New York, 513 F.3d 49, 50 (2d Cir. 2008), and because these antennas are lower in height and operate with lower power, multiple antennas are required to cover the same geographic area that could be served by just one of the "macrocell" towers preferred by the service providers. Moreover, a DAS would require more than simply substituting smaller antennas for a larger one, as the construction of an integrated system of transmitters, cables, routing devices, and specific DAS equipment would be required.

Under Chapter 251, applicants are placed into four categories based on their score in the pre-application assessment. Category A applications receive the least scrutiny and are subjected to a less rigorous application process, see Chapter 251 §§ 251-15(C), 251-16 to 251-19, and applications using preferred alternative technologies are accorded Category A

status with a screening value of only 60 points, id. § 251-15(A). In contrast, for applications proposing a location on an existing tower or water tower to achieve Category A status, a screening value above 90 points is required and for applications proposing a "co-location" at an existing wireless telecommunication facility or rooftop site require a screening value above 105 points is required. Id. Moreover, proposals using the preferred DAS or microcells technology are given 30 points toward the required screening value at the start, whereas proposals using a new tower or pole are given only 5 points and proposals using a roof top or other existing structure are given only 10 points. Chapter 251, Table 1. Proposals using alternate technology are also automatically given 10 points as a "stealthing proposal." Id. The Category A designation entitles applicants to a faster and less rigorous evaluation by the Planning Board. See id. §§ 251-16 to 251-19. In contrast, Category D applicants are required to "demonstrat[e] in detail the technological reason to justify why alternate technologies cannot be utilized. . . . The [applicant] seeking . . . an exception [to the use of preferred technology is required to] satisfactorily demonstrate the reason or reasons why such a permit should be granted for the proposed technology." Id. § 251-19(G)(9). Applicants that do not meet these requirements risk rejection by the Planning Board. See id. § 251-19(C).

Certain provisions of Chapter 251 relate to interference with radio frequency. For example, applicants in

Categories B, C, and D are required to submit information regarding radio frequencies and to certify that the proposed antennas will not interfere with existing telecommunications devices. See id. § 251-19(F)(19) & (24). Applicants seeking to build new towers must demonstrate that "radio, television, telephone or reception of similar signals for nearby properties will not be disturbed or diminished." See id. § 251-22(A)(3).

C.   Procedural History

On August 28, 2007, plaintiffs-appellants New York SMSA Limited Partnership d/b/a/ Verizon Wireless, New Cingular Wireless PCS, LLC, Sprint Spectrum L.P., and Omnipoint Communications, Inc., a wholly owned subsidiary of T-Mobile USA, Inc. (collectively, "the Carriers") sued the Town (and the Town Board) for a declaration that Chapter 251 was preempted by federal communications law.  Subject matter jurisdiction was based, inter alia, on federal question jurisdiction because the Carriers' challenge to Chapter 251 invoked the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, and the Communications Act of 1934, as amended, 47 U.S.C. §§ 253, 332.  See 28 U.S.C. § 1331.  Both sides moved for summary judgment, eventually stipulating that the district court could decide the case and rule on any issues of fact based on the submitted record.

On March 29, 2009, in a thorough and carefully considered decision, the district court (Young, District Judge) granted the Carriers' motion and denied the Town's motion,

holding that Chapter 251 was preempted by the Telecommunications Act in two respects. See N.Y. SMSA Ltd. P'ship v. Town of Clarkstown, 603 F. Supp. 2d 715, 722-28 (S.D.N.Y. 2009). First, the district court held that provisions of Chapter 251 requiring certain classes of applicants to certify that their proposed facilities would not cause radio frequency interference were impliedly preempted. Id. at 722-23 (citing Freeman v. Burlington Broadcasters, Inc., 204 F.3d 311 (2d Cir. 2000)). Second, the district court held that the provisions of Chapter 251 granting a preference for certain "alternate technologies" were preempted because they interfered with the federal regulatory scheme for wireless technology. Id. at 724-28. The district court did not reach certain issues and rejected certain of the Carriers' claims, but held in the end that severance of the preempted provisions was not appropriate. Id. at 734-35. The court gave the Town six months to re-draft Chapter 251. Id. at 735.

On April 9, 2009, the Town filed a notice of appeal from the district court's memorandum and order of March 26, 2009. The Carriers filed a protective, conditional cross-appeal on April 30, 2009, to preserve their right to appeal from issues that the district court had decided against them in the event this Court ruled in favor of the Town with respect to the Town's appeal.

On April 30, 2009, the district court (Seibel, District Judge) denied the Town's motion for a stay pending appeal and also certified the case for an immediate appeal, pursuant to 28

- 9 -

U.S.C. § 1292(b), to the extent Judge Young's decision was not immediately appealable.

On May 7, 2009, the Town filed a motion in this Court for a stay pending appeal and for permission to appeal pursuant to § 1292(b) and Federal Rule of Appellate Procedure 5. By order dated September 2, 2009, this Court denied the motion for a stay; it did not rule on the motion for acceptance of the district court's § 1292(b) certification.

After the Town's motions for a stay pending appeal were denied, it amended Chapter 251 to remove the preference for alternative technologies, subject to the outcome of this appeal. At the same time, the Town "voluntarily" amended Chapter 251 to eliminate any effort to regulate radio frequency interference.

DISCUSSION

A.    Standard of Review and Appellate Jurisdiction

We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a) because the district court's March 26, 2009, order effectively granted the Carriers a preliminary and permanent injunction against enforcement of Chapter 251, as it was then drafted.

We review de novo a district court's application of preemption principles. See Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 106 (2d Cir. 2009); Drake v. Lab. Corp. of Am. Holdings, 458 F.3d 48, 56 (2d Cir. 2006). We note that the parties agree that this appeal raises only legal issues and that

they agreed in the district court that the case could be decided on a stipulated record.

B.    The Merits

     1.    Applicable Law

          Under the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are "without effect."  Altria Group, Inc. v. Good, 129 S. Ct. 538, 543 (2008) (quoting Maryland v. Louisiana, 451 U.S. 725, 746 (1981)); see U.S. Const. art. VI, cl. 2.  In general, three types of preemption exist:  (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law"; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.  Wachovia Bank, N.A. v. Burke, 414 F.3d 305, 313 (2d Cir. 2005); see English v. Gen. Elec. Co., 496 U.S. 72, 78-79 (1990).

          The key to the preemption inquiry is the intent of Congress.  Altria Group, 129 S. Ct. at 543; Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) ("'[t]he purpose of Congress is the ultimate touchstone' in every pre-emption case") (quoting Retail Clerks v. Schermerhorn, 375 U.S. 96, 103 (1963)).  Congress may manifest its intent to preempt state or local law explicitly, through the express language of a federal statute, or

- 11 -

implicitly, through the scope, structure, and purpose of the federal law. Altria Group, 129 S. Ct. at 543. By their nature, field preemption and conflict preemption are usually found based on implied manifestations of congressional intent. Id. (citing Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995)). Even where a federal law contains an express preemption clause, the court still may be required to consider implied preemption as it considers "the question of the substance and scope of Congress' displacement of state law." Altria Group, 129 S. Ct. at 543.

Traditionally, there has been a presumption against preemption with respect to areas where states have historically exercised their police powers. Id.; Wachovia Bank, 414 F.3d at 314 ("There is typically a presumption against preemption in areas of regulation that are traditionally allocated to states and are of particular local concern."). A local government's legislative exercise of "historic police powers of the State[]" is not to be superseded by a federal statute unless it was "the clear and manifest purpose of Congress" to do so. Wyeth v. Levine, 129 S. Ct. 1187, 1194-95 (2009) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)) (internal quotation marks omitted). The presumption has not generally been applied when a local government regulates in an area "where there has been a history of significant federal presence." United States v. Locke, 529 U.S. 89, 108 (2000); see Ting v. AT&T, 319 F.3d 1126, 1136 (9th Cir. 2003) (refusing to apply presumption in favor of state contract and consumer protection laws in telecommunications

- 12 -

case "because of the long history of federal presence in regulating long-distance telecommunications").  As the district court noted below, however, the Supreme Court recently relied on the presumption in a pharmaceutical failure-to-warn case, even though the federal government has regulated drug labeling for many years.  See Wyeth, 129 S. Ct. at 1195 n.3.

This Court has recognized that the Telecommunications Act "strikes a balance between two competing aims -- to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." Omnipoint Commc'ns, Inc. v. City of White Plains, 430 F.3d 529, 531 (2d Cir. 2005) (citation and internal quotations marks omitted).  In applying this balance between federal and local regulation efforts, we have held that section 332(c)(7) of the Telecommunications Act allows local authorities to regulate matters that do not conflict with federal law.  See Freeman, 204 F.3d at 323 ("In light of the FCC's pervasive regulation of broadcasting technology, [section 332(c)(7)(A)] is most reasonably understood as permitting localities to exercise zoning power based on matters not directly regulated by the FCC.").

2.    Application

The district court held that Chapter 251 was preempted by field preemption.  The district court concluded that federal law occupied the fields of:  (1) the regulation of radio frequency interference and (2) the regulation of the technical and operational aspects of wireless telecommunications service.

- 13 -

The district court further concluded that the provisions of Chapter 251 pertaining to radio frequency interference and giving a preference to "alternate technologies" were preempted. N.Y. SMSA Ltd. P'ship, 603 F. Supp. 2d at 722-23, 725-28.

We agree with the district court's conclusions for the following reasons.

First, as to the regulation of radio frequency interference, our decision in Freeman v. Burlington Broadcasters, 204 F.3d 311 (2d Cir. 2000), is dispositive. There, a local zoning board issued a permit for the construction and use of a radio tower on the condition that the permitees remedy any resulting interference with radio frequency. Id. at 315. The issue arose as to whether the zoning board's authority to enforce the permit condition was preempted. This Court concluded that it was, holding that "federal law has preempted the field of [radio frequency] interference regulation." Id. at 320. Reviewing the applicable statutes, we held that "Congress intended the FCC to possess exclusive authority over technical matters related to radio broadcasting" and that "Congress's grant of authority to the FCC was intended to be exclusive and to preempt local regulation." Id. at 320-21; accord Southwestern Bell Wireless Inc. v. Johnson County Bd. of County Comm'rs, 199 F.3d 1185, 1193 (10th Cir. 1999) ("Congress intended federal regulation of [radio frequency interference] issues to be so pervasive as to occupy the field.").

The provisions of Chapter 251 pertaining to radio frequency interference are indistinguishable from the permit condition in Freeman. Therefore, they are preempted. Indeed, the Town has acknowledged as much, as it "voluntarily" amended Chapter 251 following the district court's decision "to clarify that the Town is not imposing any regulation with regard to RFI (radio frequency interference)."

Second, the provisions setting forth a preference for "alternate technologies" are also preempted because they interfere with the federal government's regulation of technical and operational aspects of wireless telecommunications technology, a field that is occupied by federal law. The federal government has long regulated telecommunications, and in passing the Telecommunications Act, Congress took further steps "to facilitate nationally the growth of wireless telephone service." Omnipoint Commc'ns, Inc., 430 F.3d at 531. The FCC has issued regulations setting technical standards for wireless technology, including, in particular, antennas. See Bastien v. AT&T Wireless Servs., Inc., 205 F.3d 983, 989 (7th Cir. 2000) (The FCC is "responsible for determining the number, placement and operation of the cellular towers and other infrastructure.").

Chapter 251 explicitly establishes a "preference" for certain wireless technology -- DAS and microcell systems. By doing so, Chapter 251 relegates other technology -- including technology that would meet the FCC's standards -- to an inferior and decidedly disadvantaged status. As a consequence, Chapter

- 15 -

251 interferes with Congress's goal of facilitating the spread of new technologies and the growth of wireless telephone service. To take advantage of Chapter 251's preference, carriers would have to utilize technology that would require many more (albeit smaller) antennas and substantially different supporting equipment and services.  Federal law has preempted the field of the technical and operational aspects of wireless telephone service, and there is "no room" for the provisions of Chapter 251 that give a preference to "alternate technologies."  Id. at 986.

The Town argues that Chapter 251 merely sets forth a "preference" for less intrusive alternative technologies, and that therefore it does not amount to the "regulation" of antenna technology.  We disagree.  In fact, the "preference" permeates Chapter 251.  Applicants using alternate technologies are given a double advantage right at the outset:  they are granted 40 points merely because they are using DAS or microcells (including the 10 points for stealthing technology), and they need reach only 60 points (as opposed to more than 90 or more than 105 points required for other applicants) to attain the much-desired Category A status.  Once they attain Category A status, the applicants using alternate technologies undergo a speedier and less rigorous approval process.  Indeed, Chapter 251's preference for alternative technologies is so substantial that it effectively mandates their use and interferes with the federal regulatory scheme that occupies the field.

The Town also argues that Chapter 251's preference for alternate technologies is not preempted because it relates solely to an area over which local governments traditionally have had authority -- local zoning and land use. The Town relies heavily on section 332(c)(7)(A), which preserves a local government's authority "over decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A). The reliance is misplaced.

By its terms, section 332(c)(7)(A) preserves the authority of local government over zoning and land use decisions "[e]xcept as provided in this paragraph." In fact, section 332(c)(7)(B) imposes limitations on this authority, as it provides that local governments may not discriminate "among providers of functionally equivalent services" or take action prohibiting or effectively prohibiting "the provision of personal wireless services." Id. § 332(c)(7)(B)(I), (II). While section 332(c)(7) "preserves the authority of State and local governments over zoning and land use matters," H.R. Rep. No. 104-458, at 207-08 (1996), this authority does not extend to technical and operational matters, over which the FCC and the federal government have exclusive authority, id. at 209. Indeed, in Freeman we held that, "[i]n light of the FCC's pervasive regulation of broadcasting technology, [section 332(c)(7)(A)] is most reasonably understood as permitting localities to exercise zoning power based on matters not directly regulated by the FCC." 204 F.3d at 323. Chapter 251 crosses the line between zoning and

land use regulation and the regulation of technical and operational standards.[1] Even assuming that Chapter 251 is entitled to the presumption against preemption because zoning and land use are matters within a local government's traditional police powers, the presumption is overcome because Chapter 251 goes beyond those areas into the area of technological and operational standards.

Finally, the Town relies heavily on this Court's decisions in Omnipoint Commc'ns, Inc. v. City of White Plains, 430 F.3d 529 (2d Cir. 2005), and Sprint Spectrum L.P. v. Willoth, 176 F.3d 630, 639 (2d Cir. 1999). These were cases where this Court held that a local government could reject an application for approval of the construction of a wireless service facility on the grounds that "less intrusive means" for providing service (e.g., limiting the impact of a cell site by reducing tower height or using a preexisting structure or choosing a different site) could be utilized. Willoth, 176 F.3d at 643. The question of field preemption, however, was not raised in Willoth and Omnipoint, see N.Y. SMSA Ltd. P'ship, 603 F. Supp. 2d at 726, and these were individual permit cases involving specific applications to build specific facilities on specific sites. Particular aesthetic concerns over specific sites were at stake.

---

[1] To the extent that section 332(c)(7)(A) explicitly addresses preemption, this is a case where implied preemption must still be considered because the substance and scope of Congress's preemption of local law remain in question. See Altria Group, 129 S. Ct. at 543.

In contrast, this case involves a local law that applies to <u>all</u> applications for the construction of wireless service facilities within the Town, and the Town's legislated preference for alternate technologies and a local law's interplay with federal law are thus very much in issue here.  Under these circumstances, <u>Willoth</u> and <u>Omnipoint</u> are not controlling.

We have considered the Town's remaining arguments and conclude that they are without merit.

<u>CONCLUSION</u>

For the foregoing reasons, the order of the District Court is affirmed.