11-5464-cv
In re Air Cargo Shipping Servs. Anitrust Litig.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2011

(Argued: April 19, 2012     Decided: October 11, 2012)

Docket No. 11-5464-cv

- - - - - - - - - - - - - - - - - - - - - - - -x

**In re Air Cargo Shipping Services Antitrust Litigation**

- - - - - - - - - - - - - - - - - - - - - - - -x

Before:        JACOBS, Chief Judge, KEARSE and HALL, Circuit Judges.

Plaintiffs (indirect purchasers of air freight shipping services) allege that numerous foreign airlines conspired to fix prices in violation of state antitrust, consumer protection, and unfair competition laws. The United States District Court for the Eastern District of New York (Gleeson, J.) accepted, in relevant part, the report and recommendation of Magistrate Judge Pohorelsky, dismissing those claims as expressly preempted by the Federal Aviation Act. 49 U.S.C. § 41713(b)(1). We agree that Plaintiffs' claims are expressly preempted.

Affirmed.

Christopher Lovell, Lovell Stewart Halebian Jacobson LLP (Steven N. Williams, Cotchett, Pitre & McCarthy; W. Joseph Bruckner, Lockridge Grindal Nauen P.L.L.P.; Craig C. Corbitt, Zelle, Hofmann, Voelbel, & Mason; Daniel E. Gustafson, Gustafson Gluek PLLC, on the brief), for Plaintiffs-Appellants.

IAN SIMMONS (Jonathan D. Hacker, Angela Thaler Wilks, Joshua Deahl, Anton Metlitsky, on the brief), O'Melveny & Myers LLP, for Defendants-Appellees Asiana Airlines, Inc.

Sanford M. Litvack, Eric J. Stock, Hogan Lovells US LLP, for Defendants-Appellees Air Canada and AC Cargo.

George N. Tompkins Jr., Wilson Elser Moskowitz Edelman & Dicker LLP, for Defendants-Appellees Air China Ltd. and Air China Cargo Co. Ltd.

Michael J. Holland, Roderick D. Margo, Condon & Forsyth LLP, for Defendants-Appellees Air New Zealand Ltd.

Patrick J. Bonner, Freehill, Hogan & Mahar, LLP and Charles J. Simpson, Jr., James A. Calderwood, Jol A. Silversmith, Zuckert, Scoutt & Rasenberger, L.L.P., for Defendants-Appellees All Nippon Airways Co., Ltd.

Harvey J. Wolkoff, Ropes & Gray LLP, for Defendants-Appellees Atlas Air Worldwide Holdings, Inc., Polar Air Cargo, LLC, and Polar Air Cargo Worldwide, Inc.

Daryl A. Libow, Sullivan & Cromwell LLP, *for Defendants-Appellees* British Airways Plc

Stephen Fishbein, Heather Kafele, Shearman & Sterling LLP, *for Defendants-Appellees* Cargolux Airlines International S.A.

David H. Bamberger, DLA Piper LLP (US), *for Defendants-Appellees* Cathay Pacific Airways Ltd.

John F. Savarese, David B. Anders, Wachtell, Lipton, Rosen & Katz, *for Defendants-Appellees* El Al Israel Airlines Ltd.

Terry Calvani, Freshfields Bruckhaus Deringer US LLP, *for Defendants-Appellees* Emirates

Gary A. MacDonald, John M. Nannes, Skadden, Arps, Slate, Meagher & Flom LLP, *for Defendants-Appellees* Koninklijke Luchtvaart Maatschappij N.V. (KLM Royal Dutch Airlines)

Barry G. Sher, Paul Hastings LLP, *for Defendants-Appellees* Korean Air Lines Co., Ltd.

James V. Dick, Squire Sanders (US) LLP, *for Defendants-Appellees* Lan Airlines, S.A., Lan Cargo, S.A. and Aerolinhas Brasileiras, S.A.

Daniel G. Swanson, D. Jarrett Arp, Gibson, Dunn & Crutcher LLP, for *Defendants-Appellees* Martinair Holland N.V.

John R. Fornaciari, Baker & Hostetler LLP, *for Defendants-Appellees* Nippon Cargo Airlines Co., Ltd.

3

Peter J. Kadzik, Dickstein Shapiro LLP, for Defendants-Appellees Saudi Arabian Airlines Ltd.

George D. Ruttinger, Crowell & Moring LLP, for Defendants-Appellees Scandinavian Airlines System

Margaret M. Zwisler, William R. Sherman, Ashley M. Bauer, Latham & Watkins LLP, for Defendants-Appellees Singapore Airlines Cargo PTE LTD and Singapore Airlines Ltd.

James R. Warnot Jr., Linklaters LLP, for Defendants-Appellees Société Air France

Sara E. Kropf, John M. Taladay, Steve Weissman, Andreas Stargard, Kimberly A. Murphy, Baker Botts LLP, for Defendants-Appellees South African Airways Ltd.

Rowan D. Wilson, Cravath, Swaine & Moore LLP, for Defendants-Appellees Thai Airways International Public Co. Ltd.

W. Todd Miller, Baker & Miller PLLC, for Defendants-Appellees Qantas Airways Ltd.

4

DENNIS JACOBS, <u>Chief Judge</u>:

Plaintiffs (indirect purchasers of air freight shipping services) brought suit against numerous foreign airlines ("Defendants"), alleging a conspiracy to fix prices in violation of state antitrust, consumer protection, and unfair competition laws. The United States District Court for the Eastern District of New York (Gleeson, <u>J.</u>) dismissed those claims as expressly preempted by federal law. The Federal Aviation Act preempts state-law claims "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The question is whether "air carrier" in that provision applies to foreign air carriers. We conclude that it does, and affirm.

**BACKGROUND**

At least 22 foreign air carriers have been subject to federal criminal charges in the United States in connection with a global price-fixing conspiracy. Some have settled, agreeing to pay fines and penalties totaling almost $2 billion.

Plaintiffs bring this civil suit alleging that they paid excessive prices when Defendants entered into that

conspiracy, beginning in 2000, and began levying a number of surcharges, including a fuel surcharge, a war-risk-insurance surcharge, a security surcharge, and a United States customs surcharge. Plaintiffs, as indirect purchasers of air freight shipping, dealt with the defendant airlines through intermediaries, such as freight forwarders. They bring their claims under state law because indirect purchasers are unable to obtain money damages under federal antitrust law. See Ill. Brick Co. v. Illinois, 431 U.S. 720, 729 (1977). Additional claims were brought by other plaintiffs who were direct purchasers. The claims of those direct-purchaser plaintiffs remain in district court and are not before us.

Below, the district court accepted, in relevant part, Magistrate Judge Pohorelsky's recommendation to dismiss Plaintiffs' state claims on the ground that it was expressly preempted by federal law. The district court then entered partial final judgment under Rule 54(b) of the Federal Rules of Civil Procedure, so Plaintiffs could immediately appeal the dismissal decision. This appeal followed.

## DISCUSSION

We review de novo a dismissal for failure to state a claim upon which relief can be granted. Harris v. Mills,

572 F.3d 66, 71 (2d Cir. 2009).  We also review de novo questions of statutory interpretation, Bodansky v. Fifth on the Park Condo, LLC, 635 F.3d 75, 82 (2d Cir. 2011), and questions of preemption, New York SMSA Ltd. Partnership v. Town of Clarkstown, 612 F.3d 97, 103 (2d Cir. 2010).

The relevant provision of the Federal Aviation Act is as follows:

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1).  Plaintiffs' claims undoubtedly arise under state law and are related to "price."  Id.  The dispositive question, then, is whether foreign air carriers (such as Defendants) are "air carrier[s]" under § 41713(b)(1) (the "preemption provision").

**I**

We begin "'with the language employed by Congress and the assumption that the ordinary meaning of that language

7

accurately expresses the legislative purpose.'" United States v. Aleynikov, 676 F.3d 71, 76 (2d Cir. 2012) (quoting United States v. Albertini, 472 U.S. 675, 680 (1985)). The ordinary, everyday meaning of "air carrier" includes both domestic and foreign air carriers.

That would usually end the analysis, but "[w]hen a statute includes an explicit definition," we generally follow that definition, "even if it varies from that term's ordinary meaning." Stenberg v. Carhart, 530 U.S. 914, 942 (2000). "'Statutory definitions control the meaning of statutory words, of course, in the usual case.'" Nw. Austin Mun. Util. Dist. No. One v. Holder, 557 U.S. 193, 206 (2009) (quoting Lawson v. Suwannee Fruit & S.S. Co., 336 U.S. 198, 201 (1949)). The Federal Aviation Act defines an "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). A "foreign air carrier" is separately defined as "a person, not a citizen of the United States, undertaking by any means, directly or indirectly, to provide foreign air transportation." Id. § 40102(a)(21).

Plaintiffs contend that this is the "usual case" where the statutory definitions should control. The statutory

8

definitions are consistent with this Court's authority that the terms "air carrier" and "foreign air carrier" are "mutually exclusive" because an entity cannot be both a citizen and not a citizen of the United States. United States v. Keuylian, 602 F.2d 1033, 1040 (2d Cir. 1979). That observation is sound as far as it goes; but there are occasions when statutory definitions yield to context and the development of the statutory wording over time. In any event, while an entity cannot be both an air carrier and a foreign air carrier (i.e., the terms are mutually exclusive), nothing in the statutory definitions prevents the statutory preemption provision from applying to both domestic air carriers and foreign air carriers, which is the matter at issue here.

To demonstrate that Congress has been careful to distinguish between the two terms, Plaintiffs cite 51 places in the Federal Aviation Act where Congress distinguished between an "air carrier" and a "foreign air carrier" by using both terms. At the same time, Plaintiffs concede that there are numerous provisions in the Federal Aviation Act where Congress was not so careful and used the term "air carrier" generically to reference air carriers, both

domestic and foreign.[1]  See In re Korean Air Lines Co. Ltd.,

---

[1] For example, 49 U.S.C. § 44901(i) applies to "an air carrier providing air transportation under a certificate issued under section 41102 of this title *or a permit issued under section 41302*."  49 U.S.C. § 44901(i) (emphasis added).  Because only foreign air carriers may obtain "a permit under section 41302 of this title," "air carrier" in Section 44901 must include foreign air carriers.

Section 44940(a)(2)(B)(ii) provides that "[t]he amount of fees collected under this paragraph from an air carrier described in subparagraph (A) for each of fiscal years 2002, 2003, and 2004 may not exceed the amount paid in calendar year 2000 by that carrier for screening passengers and property."  49 U.S.C. § 44940(a)(2)(B)(ii).  Defining "air carrier" in this statute to mean only domestic air carriers contradicts the Department of Transportation's regulation enforcing the provision.  See Aviation Security Infrastructure Fees, 67 Fed. Reg. 7926-01, 7927 (Feb. 20, 2002) ("For fiscal years 2002 through 2004, the fee imposed on each air carrier *and foreign air carrier* is limited to the amount that carrier paid for screening passengers and property in calendar year 2000, as determined by the Under Secretary." (emphasis added)).

Section 44925(a) requires the Secretary of Homeland Security to deploy explosives screening to "detect . . . weapons and explosives that terrorists would likely try to smuggle aboard an air carrier aircraft."  49 U.S.C. § 44925(a).  Congress did not intend to require explosives screening only for domestic air carriers but not foreign air carriers.  Subsection (d) of that same statute requires the Assistant Secretary for Homeland Security, on an interim basis, to provide screening of particular individuals on "aircraft operated by an air carrier or foreign air carrier . . . ."  Id. § 44925(d).

The original wording of 49 U.S.C. § 40118(d) governed the payment for air travel by an officer or employee of the State Department "between two places both of which are outside the United States . . . aboard air carriers which do not hold certificates under Section 1371 of this title."  49 U.S.C. § 1518 (1982).  But the legislative history made clear that the term "air carriers which do not hold certificates" meant "foreign air carriers."  See H.R. Rep. No. 95-1535, at 45 (1978) (Conf. Rep.).  Congress later corrected the language through an amendment not intended to

Anti-Trust Litig., 642 F.3d 685, 692 (9th Cir. 2011); Port Auth. of N.Y. & N.J. v. Dep't of Transp., 479 F.3d 21, 32 (D.C. Cir. 2007).

Since the Federal Aviation Act used the statutory definition in some places, and in other places used the normal, everyday meaning, this is the "unusual case" in which the statutory definitions do not have compulsory application. Nw. Austin Mun. Util. Dist. No. One, 557 U.S. at 206-07 (internal quotation marks omitted). Because it has been "'established that a statutorily defined term has different meanings in different sections, the term standing alone is necessarily ambiguous and each section must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute.'" Korean Air Lines, 642 F.3d at 692-93 (brackets omitted) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 343-44 (1997)). To dispel this ambiguity, we look to "other sources, including the legislative history, to discern Congress's meaning." Slayton v. Am. Express Co., 604 F.3d 758, 771 (2d Cir. 2010); accord Nw. Austin Mun. Util. Dist. No. One, 557 U.S. at 206-07; Robinson, 519 U.S. at 343-44;

make a substantive change. In re Korean Air Lines Co. Ltd., Anti-Trust Litig., 642 F.3d 685, 693 n.5 (9th Cir. 2011).

11

<u>Farmers Reservoir & Irrigation Co. v. McComb</u>, 337 U.S. 755, 764 (1949); <u>Lawson</u>, 336 U.S. at 201; <u>see also</u> <u>Philko Aviation, Inc. v. Shacket</u>, 462 U.S. 406, 411 (1983) (refusing to use statutory definition of "conveyance" in the Federal Aviation Act because it would "defeat the primary congressional purpose for" enacting the provision).

Resort to context and legislative history is particularly appropriate in this instance. When the Federal Aviation Act was originally enacted, it "defined 'air carrier' as being a U.S. citizen '*unless the context otherwise require[d].*'" <u>Korean Air Lines</u>, 642 F.3d at 693 n.5 (emphasis added) (quoting Pub.L. No. 85-726, 72 Stat. 731 (1958)). The proviso was removed in 1994 in an amendment that was intended to make "'no substantive change in the law.'" <u>Id.</u> (quoting S. Rep. No. 103-265, at 5 (1994)); <u>see also</u> Act of July 5, 1994, Pub. L. No. 103-272, § 1, 108 Stat. 745. We therefore consult context and legislative history to ascertain the meaning of "air carrier" in the preemption provision.


**II**

A review of the Federal Aviation Act, the various amendments to it, and the legislative history and purpose of

12

the preemption provision confirms that the preemption provision should be read to preempt state-law antitrust suits against foreign as well as domestic air carriers. Korean Air Lines, 642 F.3d at 693-95. We start with the preemption provision.

**A**

The preemption provision was part of the Airline Deregulation Act,[2] which amended the Federal Aviation Act to "encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety, and price of air services," Pub. L. No. 95-504, (Preamble) 92 Stat. 1705 (1978), while still preserving the significant regulatory authority of the federal Civil Aeronautics Board ("CAB"), see Morales v. Trans World Airlines, Inc., 504 U.S. 374, 379 (1992); see also 49 U.S.C. §§ 1374(b), 1381 (1982) (providing authority for CAB to, inter alia, bar anti-competitive conduct). Previously, the Federal Aviation Act provided that "[n]othing . . . in this chapter shall in any way abridge or

---

[2] 49 U.S.C. § 1305(a)(1) (1978) (preemption provision before it was relocated and renumbered during the re-enactment of Title 49 in 1994).

13

alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."  49 U.S.C. § 1506 (1978).

The preemption provision was included in the Airline Deregulation Act "[t]o ensure that the [s]tates would not undo federal deregulation with regulation of their own." Morales, 504 U.S. at 378; Korean Air Lines, 642 F.3d at 694 ("'In addition to protecting consumers, federal regulation insures a uniform system of regulation and preempts regulation by the states' in a field where state-based variations 'would be confusing and burdensome to airline passengers, as well as to the airlines.'") (quoting H.R. Rep. No. 98-793, at 4 (1984), reprinted in 1984 U.S.C.C.A.N. 2857, 2860).  This also resolved "uncertainties and conflicts" in the law created by conflicting or overlapping regulations issued by the federal and state governments. H.R. Rep. No. 95-1211 at 16 (1978), reprinted in 1978 U.S.C.C.A.N. 3737, 3751.  Accordingly, the preemption provision conferred on the federal government exclusive authority to regulate a carrier's routes, rates, and services.  Id. at 16 (explaining that the Airline Deregulation Act "will prevent conflicts and inconsistent regulations by providing that when a carrier operates under

14

authority granted pursuant to . . . the Federal Aviation Act, no state may regulate that carrier's routes, rates or services").

The Airline Deregulation Act achieved domestic deregulation, and the original preemption provision applied only to "air carrier[s] having authority . . . to provide *interstate* air transportation." 49 U.S.C. § 1305(a)(1) (1978) (emphasis added). Interstate air transportation is transportation between two states (or the District of Columbia) within the United States. 49 U.S.C. § 1301(24)(a) (1978). Because only domestic air carriers were authorized to engage in "interstate air transportation," 49 U.S.C. § 1301(22) (1978); Korean Air Lines, 642 F.3d at 694, the preemption provision, as originally drafted, was aimed at preemption of state laws and regulations aimed at *domestic* air carriers, only.

**B**

The International Air Transportation Competition Act of 1979 ("IATCA"), Pub. L. No. 96-192, 94 Stat. 35 (1980), extended deregulation and the market-oriented regulatory approach of the Airline Deregulation Act to foreign air transportation. Korean Air Lines, 642 F.3d at 694.

15

Although more limited than domestic deregulation, the IATCA was also intended to increase market competition in order to reduce pricing in foreign air transportation.  Id. (citing IATCA, § 102(a)(4)).[3]

## C

The Civil Aeronautics Board Sunset Act of 1984 ("Sunset Act"), Pub. L. No. 98-443, 98 Stat. 1703 (1984), included an amendment to the preemption provision that deleted the term "interstate"; so the provision preempted state laws relating to price, route, or service of "'any air carrier having authority . . . to provide air transportation.'"  See Korean Air Lines, 642 F.3d at 694 (alteration in original) (quoting 49 U.S.C. § 1305(a)(1) (1984)).  The Sunset Act conferred upon the United States Department of Transportation the authority to "'preserve the competitive direction adopted in

---

[3] Plaintiffs argue that we should disregard Defendants' reliance on the IATCA because those arguments were not raised below.  There is no new argument; the IATCA is additional support for Defendants' position.  "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."  Yee v. City of Escondido, 503 U.S. 519, 534 (1992).  In any event, the Ninth Circuit's intervening decision in Korean Air Lines relied on the IATCA's amendments to the Federal Aviation Act.  Defendants are certainly privileged to cite that case and to urge its persuasiveness.

the [Airline Deregulation Act] and the IATCA,'" which makes "clear that the ramifications of the IATCA were in the minds of the Sunset Act's drafters" when they deleted "interstate" from the preemption provision. Korean Air Lines, 642 F.3d at 695 (quoting H.R. Rep. No. 98-793 at 8, reprinted in 1984 U.S.C.C.A.N. at 2864). This legislative history leads to the "conclu[sion] that Congress intended to expand the [Airline Deregulation Act's] preemptive scope to cover state regulation of 'foreign air carriers.'" Id. (internal brackets omitted).

The legislative history of the Sunset Act justifies preemption. Although the following text concerns domestic deregulation, the point that is made is just as applicable to foreign air carriers. The House's report explained:

> Federal regulation insures a uniform system of regulation and preempts regulation by the states. If there was no federal regulation, the states might begin to regulate these areas, and the regulations could vary from state to state. This would be confusing and burdensome to airline passengers, as well as to the airlines.

H.R. Rep. No. 98-793 at 4, reprinted in 1984 U.S.C.C.A.N. at 2860. By the same token, the "purpose [of deregulation]

17

would be undermined if states could regulate foreign air carriers." Korean Air Lines, 642 F.3d at 694. Reading the statutory scheme to permit "regulation of foreign air carriers would create a confusing patchwork of regulations for airline passengers to navigate . . . . Such a result would not be consonant with Congress's express purpose in enacting the statute." Id.

**D**

Plaintiffs argue that the removal of a single word from the preemption provision--"interstate"--cannot support expansion of the preemption provision to cover foreign air carriers. We disagree. It had been beyond dispute that the preemption provision only applied to domestic air carriers. The Sunset Act, however, was enacted on the heels of the IATCA, which expanded deregulation of the domestic airline industry to foreign air carriers. In light of the clear signals from Congress that deregulation was to continue unabated--and not be frustrated by re-regulation by the states--Congress's removal of "interstate" was intended to expand the preemption bar to state regulation of foreign air carriers.

18

Since the removal of "interstate" must be given some effect, Plaintiffs propose a congressional intent to expand the preemption provision to domestic air carriers that only had authority to provide overseas air transportation[4] and thus were not protected by the wording of the original enactment ("air carrier[s] having authority . . . to provide interstate air transportation," 49 U.S.C. § 1305(a)(1) (1978)).  However, by 1984, that category of domestic air carrier no longer existed.  Before 1982, if an air carrier provided overseas--but not interstate--transportation, the CAB would issue an authorizing certificate limited to air transportation overseas.  The CAB's authority to issue such certificates expired on December 31, 1981, Airline Deregulation Act of 1978, Publ L. No. 95-504, § 40, 92 stat 1705, 1744-47; starting January 1, 1982, the CAB issued certificates for domestic air carriers that authorized "interstate *and* overseas air transportation . . . between all points in the United States, its territories and possessions (without regard to point listings)."  In re Certificate Formats in 1982, CAB Order No. 81-11-23, at 2

---

[4] Overseas air transportation is air transportation between a state (or the District of Columbia) and a territory or possession of the United States or between two territories or possessions of the United States.  49 U.S.C. § 1301(24)(b) (1982).

19

(Nov. 3, 1981); see also Proposals to Provide Essential Air Service at Natchez, Mississippi, CAB Order No. 81-12-132, at 1 (Dec. 22, 1981) (making final the proposed orders and findings set out in the November 3, 1981, Order).

Plaintiffs also argue that deregulation was a domestic initiative; so an expansion of the preemption provision to protect foreign air carriers does not flow from deregulation. However, the IATCA was aimed at foreign air carriers, and the Sunset Act was intended to preserve the pro-competition policy approach of the IATCA as well as the Airline Deregulation Act. See Korean Air Lines, 642 F.3d at 695 (citing H.R. Rep. No. 98-793 at 8, reprinted in 1984 U.S.C.C.A.N. at 2864).

Plaintiffs argue that the IATCA has no bearing on the question before us because it mainly redistributed the administration of federal regulatory authority among federal agencies, and therefore was not deregulatory. This is incorrect. The IATCA (and, later, the Sunset Act) continued the deregulation of the airline industry and expanded deregulation to foreign air carriers. Some regulatory authority that was deemed critical was preserved and transferred from the CAB to the Department of Transportation, Korean Air Lines, 642 F.3d at 694-95 (citing

20

H.R. Rep. No. 98-793, at 2, 8, 13, <u>reprinted in</u> 1984 U.S.C.C.A.N. at 2857, 2858, 2864, 2869), but deregulation is an incremental process, not an annihilation. Maintaining some federal regulatory authority had the not-incidental effect of filling holes for which state regulation was to be excluded. <u>See</u> <u>Korean Air Lines</u>, 642 F.3d at 694.

Finally, Plaintiffs point out that Congress chose to omit from the IATCA any preemption provision specifically for foreign air carriers. That does not matter because we conclude above that Congress achieved that result by other means.[5]

## III

The legislative history of the preemption provision and the amendments to it confirm that Congress intended the term "air carrier" in the preemption provision to mean domestic

---

[5] Plaintiffs point to a proposed (but rejected) amendment to the preemption provision from 1981 that would have expanded protection for any air carrier providing interstate air transportation by removing the phrase, "having authority under subchapter IV of this chapter to." Plaintiffs argue that this amendment is significant because it would not have protected foreign air carriers. That Congress considered (and rejected) an amendment entirely unrelated to foreign air carriers is of no moment. In any event, this amendment (even if enacted) would not advance Plaintiffs' position because it preceded the Sunset Act, which removed "interstate" from the preemption provision and expanded the provision's protection to foreign air carriers.

21

and foreign air carriers alike.  A contrary result would undermine Congress's purpose in enacting the preemption provision and the various deregulation statutes.  See Philko Aviation, 462 U.S. at 411; accord Lawson, 336 U.S. at 201 (rejecting mechanical use of a statutory definition that would "destroy one of the major purposes of" enacting the provision).

The intent of Congress in deregulating the industry and in enacting the preemption provision was "[t]o ensure that the [s]tates would not undo federal deregulation with regulation of their own."  Morales, 504 U.S. at 378.  The preemption provision protects air carriers against state regulation relating to prices, routes, and services, 49 U.S.C. § 41713(b)(1); so re-regulation could comprehensively defeat the federal effort to reduce regulation.

Plaintiffs' reading of the preemption provision, which would preempt only state regulation of domestic air carriers, would allow states to regulate the routes, prices, and services of foreign air carriers that operate all over the world.  That would risk subjecting foreign air carriers and their customers to "a confusing patchwork" of state-by-state regulation, such as different rules for purchase of otherwise identical international flights if one ticket is

22

from an American air carrier and the other from a foreign carrier.  See Korean Air Lines, 642 F.3d at 694 (explaining that, in the context of domestic deregulation, state-by-state re-regulation would subject air carriers and their customers to "state-based variations [which] 'would be confusing and burdensome to airline passengers, as well as to the airlines.'" (quoting H.R. Rep. No. 98-793 at 4, reprinted in 1984 U.S.C.C.A.N. at 2860)).

Allowing the states to regulate only foreign air carriers would be particularly peculiar since "[f]oreign commerce is pre-eminently a matter of national concern." Japan Line, Ltd. v. Cnty. of L.A., 441 U.S. 434, 448-49 (1979).  Apart from that oddity, a preemption provision that favors domestic air carriers by subjecting only foreign air carriers to state regulation would likely be viewed as "discriminat[ion] against foreign air carriers" in violation of the United States' treaty obligations.  Korean Air Lines, 642 F.3d at 696.[6]  Interpreting the preemption provision in

---

[6] See, e.g., Convention on International Civil Aviation, art. 11, Dec. 7, 1944, 61 Stat. 1180, 15 U.N.T.S. 295 (providing for application of laws and regulation "without distinction as to nationality" of airlines of signatory states); Air Transport Agreement, U.S.-S. Kor., art. 11, June 9, 1998, State Dept. No. 98-111, 1998 WL 468488, at *7 ("Each Party shall allow a fair and equal opportunity for the designated airlines of both Parties to compete in providing the international air transportation

23

such a manner "offend[s] the longstanding principle that statutes should be construed in accordance with international law."  Id. (citing Murray v. Schooner Charming Betsy, 6 U.S. (2 Cranch) 64, 118 (1804)).[7]

* * *

In sum, the ambiguity of Congress's use of the term "air carrier" in the preemption provision necessitates review of the legislative history of the preemption provision and the various statutes deregulating the airline industry.  That legislative history (confirmed by additional canons of statutory construction) leads us to conclude that "air carrier" in the preemption provision means both

---

governed by this Agreement."); Treaty of Friendship, Commerce and Navigation, U.S.-S. Kor. art. I, Nov. 28, 1956, 8 U.S.T. 2217 ("Each Party shall at all times accord equitable treatment to the persons, property, enterprises and other interests of nationals and companies of the other Party.").

[7] Plaintiffs contend that none of the treaties cited, supra note 6, is violated by a regulatory system that discriminates between domestic and foreign air carriers. This argument was rejected in Korean Air Lines, 642 F.3d at 696.  In any event, even without an outright violation, the treaties demonstrate a commitment by the United States to regulating domestic and foreign air carriers in a similar fashion. Subjecting only foreign air carriers to suits under an overlapping patchwork of state laws does not comport with that principle.

domestic and foreign air carriers.  Plaintiffs' state law claims are therefore expressly preempted, and the district court correctly granted Defendants' motion to dismiss.

Because Plaintiffs' claims are expressly preempted, we need not consider whether they are impliedly preempted.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is affirmed.